69972. VENABLE v. JOHN P. KING MANUFACTURING COMPANY.
(331 SE2d 638)

BEASLEY, Judge.

This is an appeal from the trial court's grant of summary judgment for defendant-appellee Spartan Mills.

Plaintiff-appellant Venable filed a workers' compensation claim in 1982 to recover for byssinosis, a pulmonary disease caused by exposure to cotton dust, which she alleges she contracted while working for Spartan Mills for sixteen years, up until she became disabled and ceased working April 22, 1981. At the hearing before the ALJ on May 3, 1982, it was stipulated that the employer and the claimant were subject to the Workers' Compensation Act and that jurisdiction and venue were proper. The ALJ by order on July 29, 1982, denied compensation on the ground that Venable did not meet her "burden of proving a work-related injury or illness" and particularly that "the evidence does not show that the claimant suffers from Byssinosis." There was no appeal.

Somewhat over a year later, in October 1983, Venable filed a "Motion to Re-Open" her claim, asserting that she had a change in condition for the worse and also had new evidence in that she had confirmed her condition as byssinosis by a medical diagnosis of April 22, 1983. The ALJ ordered referral to the medical board to determine whether the evidence showed a change of condition and, if so,

whether claimant suffered a disability from byssinosis. However, the Board, concluding that the ALJ's 1982 negative award was res judicata as to whether Venable had byssinosis or not, reversed the ALJ and denied Venable's request to reopen. An appeal of the decision by the former employee is presently pending in the superior court.

After filing the motion to reopen and the day after the ALJ's hearing on it, but before his ruling was issued, Venable on December 13, 1983, filed the negligence action against the employer, which is the subject of this appeal, to recover damages due to cotton-dust exposure. Based on the record the trial court granted summary judgment for Spartan Mills, concluding that the negligence action was barred because the exclusive remedy available to Venable was under the Workers' Compensation Act, and alternatively that the statute of limitation had run on any negligence claim. Venable appealed, citing error in both rulings.

The primary question before us is whether the Workers' Compensation Act applies. If it does, Venable may not bring a common law cause of action for negligence. If it does not, she can. OCGA § 34-9-289.

In her complaint below, plaintiff alleged that the Workers' Compensation Act was not applicable because "byssinosis was not a listed occupational disease at the time that [she] last worked for Defendant, which was the date that [she] was last exposed to said cotton dust." Defendant denied that the Act did not apply and recounted the previous actions taken under the Act, which proceedings were admitted.

On appeal the employee argues that the 1971 amendment to the Act, which added the "other occupational diseases" category to the list of enumerated diseases in OCGA § 34-9-280 and thus embraced byssinosis, did not apply to her because she began employment *before* its enactment and terminated employment *after* the Workers' Compensation Act was made the exclusive remedy for compensation due to her disease by the 1974 amendment, presumably to OCGA § 34-9-11. It is undisputed that Venable's period of employment was 1965 to April 22, 1981.

"It was early established in Georgia that the relationship between an employer and an employee under the Workers' Compensation Act 'aris[es] out of a contract created by law and not out of any theory of tort . . .' [Cit.]" *Synalloy Corp. v. Newton*, 171 Ga. App. 194, 196 (2) (319 SE2d 32) (1984), reversed on other grounds, *Synalloy Corp. v. Newton*, 254 Ga. 174 (326 SE2d 470) (1985). Thus, whether the act and amendments thereto apply depends on the relationship of the parties at a given time. "In exchange for the right to recover scheduled compensation without proof of negligence on the part of the employer in those cases in which a right of recovery is granted, the employee foregoes other rights and remedies which he might otherwise

have had, but if he accepts the terms of the act he as well as the employer is limited to those things for which the act makes provision." *Nowell v. Stone Mountain Scenic R.*, 150 Ga. App. 325 (257 SE2d 344) (1979). The tort immunity of the employer is the consideration or quid pro quo for which it undertakes liability for workers' compensation benefits independent of fault. *Cleveland Elec. Constructors v. Craven*, 167 Ga. App. 274 (306 SE2d 364) (1983). Of course, as a matter of law, the provision of the Act and its amendments cannot impair the contract. See *Synalloy*, supra, and citations in the Court of Appeals opinion.

When changes in the workers' compensation law occur during the contractual relationship between employer and employee, there is implied an acceptance of those changes in the employment contract. Where the employment relationship terminates prior to the effective date of the amendment, it would not apply if it creates a substantive right because the contractual relationship has ended, unless of course the three elements for a cause of action in tort did not yet coexist. *Synalloy Corp. v. Newton*, supra. That is to say, the cause of action would not vest until the injured employee learned or reasonably should have learned of the injury and also that its cause was the employment. If this occurred after the effective date of the amendment creating a substantive right, i.e., a cause of action, it would not matter that employment had ceased earlier. The law would impose this upon the contract.

By the same token, the law in existence and effective during the employment would apply as having been incorporated as a part of the contract. The amendments of both 1971, adding the "other occupational diseases" category to the list, and 1974, regarding exclusivity of rights, OCGA § 34-9-11, which turns out to be not relevant here, are applicable to the employee's contractual relationship with her employer.[1]

The law in effect when the employee here allegedly contracted byssinosis while she was employed and when she learned of it and its

---

[1] Appellant claims that the exclusivity provision of OCGA § 34-9-11 does not apply to her because the amendment of 1974 came after she *commenced* employment in 1965. But that provision, while it is the general exclusivity law, is not controlling here. Although it relates to the whole Workers' Compensation "Chapter," a narrower provision applies. OCGA § 34-9-289, enacted long before plaintiff ever commenced employment, controls because it governs claims under the "article" relating to compensation for occupational disease. It limits the broader exclusivity provided by OCGA § 34-9-11. As was recognized in *Fenster v. Gulf States Ceramic*, 124 Ga. App. 102, 105 (182 SE2d 905) (1971): "To say that the exclusionary provisions of § 114-103 [now OCGA § 34-9-11 but pre-1974 and later amendments] are the same as those in § 114-811 [now OCGA § 34-9-289] is to totally ignore material differences in language used to express the intent of the legislative body in each instance. This we cannot do." So the fact that OCGA § 34-9-11 was amended during the course of her employment is irrelevant to the issues in this case.

cause, was the law prior to the 1982 amendment which expressly added byssinosis and special rules of limitation on claims based on it. Ga. L. 1971, pp. 895, 900; Ga. L. 1982, pp. 3, 70, § 34 (15); Ga. L. 1982, p. 2485, §§ 4, 5, 8. The addition enumerating byssinosis became effective April 22, 1982,[2] before the ALJ ruled. At the time the employee's exposure to cotton dust and employment ended in April 1981, and at the time she made her claim for work-related byssinosis, however, the law provided that workers' compensation was the exclusive remedy for not only the specifically enumerated occupational diseases (of which byssinosis was not one until April 22, 1982), but also for "other occupational diseases." The latter were covered if the claimant proved to the satisfaction of the Board (or medical board) the presence of five criteria. OCGA § 34-9-280 (3) (F).[3]

The ALJ, and later the Board, considered byssinosis as one of these covered diseases (either mistakenly under the belief that the 1982 amendment applied or as an "other" occupational disease), thereby agreeing with the claimant who sought coverage at that time, but they denied coverage because of the lack of proof that she had the disease. The ALJ did not deny an award on the ground that byssinosis was not a covered occupational disease nor was that in dispute. He was apparently "satisfied" that it was. The same applied to the second filing in 1983, when the ALJ and the Board both recognized it as a covered disease. That is conclusive. It is not a jury question. *Synalloy Corp. v. Newton*, supra.

The defendant below met its burden and is entitled to the same conclusion set out in *Bishop v. Weems*, 118 Ga. App. 180, 181 (162 SE2d 879) (1968): "If there were an award of compensation it would, of course, be an adjudication of coverage and consequently a bar to a common law action." Here, there has been a finding of coverage but no favorable award because the proof did not establish the existence of the disease in the employee. Coverage is what controls, not compensation; it is the opportunity for compensation without proof of negligence which precludes appellant from maintaining her negligence suit below. Where the Act is applicable, it provides the employee's exclusive remedy against the employer. *Freeman v. Ryder Truck Lines*, 244 Ga. 80, 82-83 (259 SE2d 36) (1979). Thus, whether the claimant actually wins compensation is irrelevant to the question.

The employment contract having included the provisions for coverage existing during her employment, and those provisions which she properly invoked being exclusive, the employee may not also pursue a claim of negligence.

---

[2] But November 1, 1982, in its present form, Ga. L. 1982, pp. 2485, 2489, 2493-2495.

[3] At the time the employee made her claim, the criteria were in subsection "(E)."

It is of no assistance to her that the Act was amended effective April 22, 1982, to add byssinosis as a listed occupational disease. The 1982 amendment refined the claim for byssinosis by expressly listing it as an occupational disease and limiting coverage to medically diagnosed byssinosis where the employee had been exposed to cotton dust for at least seven years and the disablement occurred within three years after the last injurious exposure in the employment.[4] It also provided a special period of limitation for filing claims with respect to this disease, but Venable presumably had already filed hers, as the hearing was May 3 and the amendment was effective April 22. The amendment did not, however, create a new substantive right as to her because byssinosis was already covered since it came within the category "other occupational diseases." OCGA § 34-9-280 (3) (F).[5]

Since byssinosis was recognized as a work-related disease by the ALJ for the Board, the basis for denying an award being a lack of evidence and not non-applicability of the Act, and our finding no reason to conclude as a matter of law that the Act did not apply, the employee was foreclosed from pursuing a negligence action. OCGA § 34-9-289. "Under Georgia law, the existence of workers' compensation coverage excludes all other remedies against the employer. [Cits.]" *United States v. Aretz*, 248 Ga. 19, 20 (280 SE2d 345) (1981). Although during the period of her employment byssinosis was not an enumerated disease, it was "listed" in that it is shown by the record in this case that it was regarded as a covered occupational disease.

This being the case, the enumeration of error regarding the statute of limitations as to negligence action is moot.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MAY 21, 1985.

*Vernon J. Neely*, for appellant.
*William C. Reed*, for appellee.

---

[4] Other timing controls when death is caused.
[5] Prior to 1982 this was subsection (E).